IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. CR-03-275-E-BLW |
| ) | |
| v. ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| DAVID GONZALEZ-TADEO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Ninth Circuit remanded this case for further proceedings consistent with *United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc). *See* Docket No. 26. Defendant subsequently filed a Sentencing Memorandum (Docket No. 30) requesting resentencing to which the Government filed a Response (Docket No. 33). *Ameline* requires a district court on remand to determine if it would have imposed a materially different sentence under advisory guidelines.

For the reasons set forth below, the Court has determined that it would not have imposed a materially different sentence under advisory guidelines. Thus, Defendant's original sentence stands, subject to appellate review based on the *Booker* reasonableness standard. *See Ameline,* 409 F.3d at 1074-75; 1085.

## BACKGROUND

**Memorandum Decision and Order - 1**

On July 8, 2004, the Court sentenced Defendant to a term of imprisonment of 37 months upon his plea of guilty to illegal reentry following deportation in violation of 8 U.S.C. § 1326(a). *Judgment* (Docket No. 20). The Presentence Report had calculated a base offense level of 8, a 16-level enhancement for deportation following conviction for a crime of violence, and a 3-level reduction for acceptance of responsibility resulting in a total offense level of 21 with a criminal history category of III and a guideline range of 46 to 57 months. The prior conviction arose under Idaho's statute for battery with intent to commit a serious felony and consisted of two charges of lewd conduct with a minor. PSR ¶ 27. At sentencing, Defendant challenged the 16-level enhancement and moved for a departure based on cultural assimilation.

The Court overruled Defendant's objection to the enhancement and denied the motion for departure. However, the Court granted the Government's § 5K3.1 motion for a 2-level downward departure pursuant to its early disposition program. Sent. Tr. 19. The resulting guideline range based on an offense level of 19 with a criminal history category of III was 37 to 46 months. Sent. Tr. at 20. The Court then sentenced at the bottom of the guideline range based, in part at least, on the cultural assimilation argument. Sent. Tr. 20.

Defendant subsequently appealed his sentence to the Ninth Circuit Court of

**Memorandum Decision and Order - 2**

Appeals challenging the 16-level enhancement. The Ninth Circuit affirmed the enhancement but, as stated above, remanded for resentencing consistent with *Ameline*.

In accordance with the procedures set forth in *Ameline*, the Court provided Defendant with an opportunity to opt out of resentencing and sought briefs from counsel regarding whether or not the sentence should be materially different. In his brief, Defendant requests reconsideration of the Court's decision regarding cultural assimilation. In its Response, the Government opposes any reduction of sentence given that most of Defendant's assimilation occurred while he was in this country illegally and his commission of crimes during that time.

## APPLICABLE LAW AND DISCUSSION

*Ameline* instructs that if a district court judge determines that the sentence imposed would not have differed materially under an advisory guideline scheme, the judge "should place on the record a decision not to resentence, with an appropriate explanation." *Id.* at 1085.

In making its determination on remand, the Court has examined the Presentence Report and Addendum prepared for the original sentencing; Defendant's and Government's sentencing memoranda (Dockets 15, 17, and 18) from the original sentencing; the transcript of the sentencing hearing; the briefs of

**Memorandum Decision and Order - 3**

the parties on resentencing; and *Ameline*.

### A.     Defendant's Offender Characteristics and Criminal History

Defendant had been brought to this country by relatives in 1958 at the age of 4, his mother having died when he was nine months old and his father apparently having had nothing to do with the family. PSR ¶¶ 32 and 33. He was raised and schooled in the United States and received a green card in 1967. PSR ¶¶ 33 and 43. His green card was revoked in 1977 for unknown reasons. PSR ¶ 33. He was convicted of illegal reentry in 1980 and released to ICE and presumably deported. PSR ¶ 23. However, it is unclear whether Defendant was deported and, if so, when he returned to this country. Defendant states in the sentencing memorandum that he was not deported after revocation of his green card and that he continued to live in this country until his first deportation in 2002. Sent. Mem. at 2 (Docket No. 30). However, according to the PSR, records revealed prior expedited removals. PSR ¶ 7. Defendant was deported on June 19, 2003 following his conviction for the 2002 felony that was the predicate for the 16-level enhancement. PSR ¶ 27. He reentered this country on or about September 24, 2003. ¶ 6.

During his time in the United States, in addition to the predicate conviction for lewd conduct with a minor, Defendant was convicted twice of driving under the influence and once of assault. PSR ¶¶ 24-26. After a prior deportation, he also

**Memorandum Decision and Order - 4**

apparently tried to reenter the United States on July 28, 2003 by falsely claiming to be a United States citizen, but he was returned to Mexico via "expeditious removal." PSR ¶ 30. The PSR also indicates prior arrests for battery, resisting/obstructing, and delivery of a controlled substance. PSR ¶ 7.

Defendant has also fathered four children, two from an early relationship in San Diego, and two with a woman to whom he was married from 1977 to 1986. PSR ¶¶ 34-36. All of the children are adults with whom he maintains regular contact. PSR ¶¶ 34-35. Defendant has considered Idaho home since 1975. PSR ¶ 33. In 2003, he married a woman with whom he had had a 10-year relationship and who had indicated an intent to relocate to Mexico with Defendant when he is released from custody. PSR ¶ 36. Although Defendant stated he had no real family ties in Mexico, he has an uncle who lives in his grandmother's house in Tijuana where he plans to settle upon his release. PSR ¶ 37. He reads and writes both English and Spanish. PSR ¶ 43. Defendant appears to have been regularly employed while in Idaho. PSR ¶ 44.

### B. Findings at Original Sentencing

At the original sentencing, the Court noted that the departure for cultural assimilation was to be granted only in extraordinary cases, and not usually where the assimilation occurs only after illegal reentry. Sent. Tr. 19-20. The Court

**Memorandum Decision and Order - 5**

further noted that most of Defendant's assimilation occurred in the 27 years during which he was in this country illegally. Sent. Tr. 20. The Court concluded:

> I am sympathetic. But it strikes me that for the case to truly be extraordinary, it would have to be a case where the individual was here legally for an extended period of time and developed such ties to the area during that period of time in which he was here lawfully, that that should be taken as some extraordinary justification for his illegal reentry.
>
> I just can't find in this case that it is so unusual and extraordinary as to justify the downward departure. However, I do intend to impose a sentence at the bottom of the guideline range . . . .

Sent. Tr. 20.

After imposing sentence, the Court restated its consideration of the cultural assimilation issue:

> I have imposed a sentence at the bottom of the guideline range because of the – in large part because of cultural assimilation and the fact that the Defendant, at least initially, was here legally, although I think his right to remain here was revoked in 1977. I think that's a mitigating factor to be considered by the Court, but it is not so unusual or does not exist in this case in such proportion that it would justify a downward departure.

Sent. Tr. at 23.

The Court recognizes that it would not have been precluded, had the guidelines been advisory, from considering Defendant's cultural assimilation even

**Memorandum Decision and Order - 6**

if not extraordinary. The Court also recognizes that Defendant did not come to this country of his own volition, that he has been gainfully employed throughout most of his adult life, that all but one of his prior convictions occurred during 1992, and that he returned to this country to be with his family rather than for illegal purposes. On the other hand, the Court recognizes that his relatively recent predicate conviction is a serious one and that he has displayed disregard for the laws of this country by repeatedly reentering without permission. Furthermore, unlike some individuals in his position, Defendant has at least some family and a place to live in Mexico, an ability to speak and write Spanish, no minor children from whom he would be separated, and a wife who has indicated a willingness to move to Mexico with him after his release.

Although the Court was, and is now, sympathetic to Defendant's situation, that sympathy was reflected in a sentence at the bottom of the guideline range. Furthermore, when the Court granted the Government's § 5K3.1 motion for a 2-level departure, it did so with "serious reservations where there has been a prior illegal reentry and where it seems apparent that a defendant has repeatedly violated the immigration laws by reentering this country illegally." Sent. Tr. 3-4. Therefore, on balance, the Court finds that any inclination to sentence below the guideline range based on cultural assimilation under advisory guidelines would

**Memorandum Decision and Order - 7**

have been offset by its inclination to deny the § 5K3.1 departure under advisory guidelines.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the sentence imposed on July 8, 2004 (Docket No. 20) would not have been materially different under advisory guidelines. Therefore, the original sentence stands, subject to appellate review based on the reasonableness standard established in *Booker*.

DATED: **October 16, 2006**



Honorable B. Lynn Winmill
Chief U. S. District Judge